71304 Wendy Carolina Sosa-Perez v. Jefferson B. Sessions Good morning, Honorable Justices. May it please the Court. My name is Tracy Ferricano, and I, together with my co-counsel Sherry Murray, represent the petitioners in this action. This case comes before the Court emanating from a denial of my client's application for political asylum before the Court, for which there were also two derivative applications for her two minor children. The case was appealed to the Board of Immigration Appeals, who subsequently dismissed the action. At the crux of this case is the statutory nexus requirement as it relates to family as a particular social group. The facts in this case are largely undisputed. The petitioner, Ms. Sosa-Perez, did testify. However, additional witnesses that were present and prepared to give testimony instead submitted affidavits, which were accepted by the government and not contested by the government. Therefore, what remains, the issue that remains is whether or not the application of the statutory nexus requirement was in fact appropriate based on the facts of this case. And as we relay in our reply brief, it is our position that the reasoning recently articulated in our sister circuit, the Fourth Circuit case, is correct. Well, counsel, the difficulty I have with your argument is that in each of the two Fourth Circuit cases that you cite, there is what I call a linchpin link between the family and the persecuting group. In one case, it is, it is the alleged persecution occurred after the rejection of a recruitment attempt into a gang of a family member. There is some specific link that then triggers a series of retaliatory acts. Here, there is no link at all. There is, excuse me, there is merely a series of acts, virtually all of which are with, with no indication that any robbery has any direct link to the family, no indication that this family is treated differently than any other family in Honduras, which unfortunately is a violent society. It is not Honduras, Guatemala. This is Honduras. It is Honduras, Your Honor. And I submit that there is ample support in the record to demonstrate the causal link required as between the membership and the family as a particular social group. Okay, what's the causal link? The causal link, in fact, and again, the, the analogy that Point me to a piece of evidence that, that illustrates the causal link. Well, under the definition of persecution, when reviewing both the direct and circumstantial evidence and reasonable inferences that can be drawn, and considering the totality of the harm, that can be drawn based upon severity, frequency, and duration. Just on the nexus. Yeah, we're not talking about severity of harm. We're talking, we're talking about the nexus requirement. And I ask you what I think is a simple question. Point me to a single piece of evidence that shows a causal link between what happened in this particular family. I realize that robberies are very common in Honduras. That's unfortunate. But is there any evidence in the record that this family is treated differently than any other family in Honduras? At least any other family that, that has enough assets to make robbery worthwhile? Well, based upon my review of the transcripts from the individual hearing, there was testimony provided that, in fact, this persecution began some 30 years ago to my client's grandfather in connection with him being a landowner. And as that status and that stature accrued, his family members, as a result, were subjected to persecution, robbery, his brother was murdered, and there were serious physical violent acts taken against members of this family. But, I mean, these generalities are, you know, are fine, and I appreciate you're trying to represent a client. What is there to show that any of the acts of robbery subsequent to the original robbery had anything to do with land ownership? Did any of the robbers make any statements? Again, and in that regard, I rest upon some of the case law that speaks to the fact that absolute certainty of the motive, certainly, with this kind of... No, absolute certainty isn't required, but there has to be a showing of a reasonable probability. There has to be some link. We can't just make this stuff up as we go along. Understandably, Your Honor. And I submit that the reasonable inference may be drawn from the fact that the grandfather was murdered. His brother was later murdered, owing to the fact, and again, I'm drawing this from the testimony provided at the merits hearing, from having observed or having information pertaining to the original act. Do you describe anything in particular to the fact that when a couple of the relatives visited, that they too were attacked? And so that... Does that make any difference in your analysis in answering Judge Selya's question? It does, and that's where I was attempting to elaborate as far as giving a general context, which the case law directs us to do, insofar as there is reactionary or a demonstration of a reactionary type element operating here. For example, immediately upon entering the country, again, as Your Honor points out, these two family members were very quickly subjected to demonstrable acts of violence, particularly as well with regard to the incident involving Ms. Sosa Perez. She was, again, it was actual harm. It was actual physical violence. Am I remembering rightly or wrongly that there's some evidence in the testimony at the hearing of one family member turning in one of the assailants? Correct. And that I... And do we have any evidence that following that incident, any of the subsequent assailants had any connection to the assailant that was turned in? I believe we do, Your Honor, because I believe that the record speaks to two separate police reports having been filed, one some time ago back in 1999, but one more recently, and I believe the record will have the definitive date, was in the area of 2012 and 2013, in around the time that my client was in fact attacked. Additionally... Maybe I missed something. Do we have any evidence that the assailant who had been turned in was connected to any subsequent assailant? There is evidence that at one point, I believe it's Ms. Sosa Perez's aunt, was able to identify one of the perpetrators in a prior incident. That fact, I believe, according to the testimony, was relayed to authorities. Again, some of it is certainly ambiguous. Well, that's, I guess, what made my biggest problem is, it would be one thing if the BIA had ruled for you, and then the question was, you know, could substantial evidence support the conclusion that there was an excess? But they ruled against you. Correct. And the question is whether we can overturn that. And I guess if the record is what it is, how can you say it's an unreasonable judgment for the agency to conclude that on this record, there's just not enough to be convinced? And even if you were the IJ or I was the IJ, you might come to a different conclusion. On the review of that decision, what in the record makes it so that we're basically compelled to overturn that assessment of the record? Well, because this factual scenario is different and distinguishable from some of the other case law insofar as the other case law typically speaks to one or two family members. In this case, we have a succession of individualized acts committed against not one, not two, but I believe six or seven independent members of the family. And again, that's where we insofar as analyzing these factors rather than having a requirement of exclusivity and essentially having an either or proposition and categorizing one character as either protected or non-protected, they were cognizant of the fact that these factors, which again the IJ identified in support of her denial, greed and wealth, which were independent from the IJ, they can maintain a duality. And though they in some instances are insufficient, when combined with the facts here, the cumulative totality, they in fact do. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court, Anna Juarez for Respondent, Attorney General. The record here does not compel the reversal of the agency's decision denying asylum and withholding of removal. And in respect to the dispositive issue in this case, which is whether the petitioner established a nexus between her protected ground family membership and the persecution she fears, as Your Honors have noted, there just is no evidence in the record to compel that conclusion. Why don't you say that? But I look at this record and you have two family members left living in the country. One lives behind an electric fence and barbed wire and one is in hiding. Now, doesn't that lead one to the belief that this family as a family, not as a family, but these are not random acts that just happen to be strung together? That you have people who are, yes, still living in the country, but they're living in the country under very dangerous situation? The evidence in the record includes country conditions showing that Honduras is a very there's a lot of violence there. And what's the issue is, I mean, there's nothing to show that this family is different from any other family. Yes, the family has been. Except you've had a 30-year history of murders, attacks, visitors being attacked when they none of us would like to live under. So doesn't that sort of prove the family nexus? It doesn't. And this court has held several times that just having multiple family members that have experienced the same type of harm is not enough to establish a nexus to a protected ground. And here, even looking at each family member, two of the events happened before when a mom was a child and another uncle was murdered. There's no evidence in the record that explains why or why those crimes were motivated. The next robbery was in 1999. An uncle was robbed. His mother was threatened. It appeared to be gang members. There's, again, no record evidence of why and that it had any connection to any other family members. The next incident happened in 2011. That's when the family members visited from the United States. I believe it was their second day visiting. They were with an uncle. They were held up by... Can I just ask, what is the missing evidence? So presumably if she had said in each of these attacks the assailant said, we're going to come back for the rest of your family, you would say, okay, then there's evidence of a nexus. That would at least be some evidence that the agency could have, again, may not have... Assuming they found her credible. Right. Assuming they found her credible. Assuming they found her credible. And so she had testified to that and there's nothing in the record saying that what she said isn't right. Right. Presumably that would establish a nexus. And the Fourth Circuit case has language like that. Correct. Now just take it a step further. Suppose she says, they never said anything, but I know that's what's happening. And we say, she's credible. Does that count as evidence or not? The agency could decide that, but in this case the agency found that the things that she said, and I can go over the specific testimony that the agency looked at, and the agency here found that it wasn't enough and the record just doesn't compel, there's not enough evidence to overturn the agency's decision in this case. And the testimony, when she was asked why her family was attacked many times, perhaps out of jealousy, I don't know really, when asked was trying to break into houses and harm her family. That's what we do not know. And Petitioner's Counsel argued that we should also look at the declarations and that we contain the exact same statement, which states, I don't know why gangs have always targeted my family. They just have. That's my exact question. She doesn't know why they're doing it. She knows they're doing it. Right. So that's a statement. She believes the family's being targeted. And what I'm asking is, it says they're targeting the family. We'd say that's enough. She says, I don't know why they're doing it, but they're targeting my family. And you say that's not enough. I understand the distinction. But why is it a distinction that's meaningful? In other words, we've got a credible witness. She's on the ground. She's the one who has experienced this. And she's saying, I'm not saying, you know, we're wealthy and they go after all wealthy families. She's saying, my family is being targeted. I know that to be true. And every statement is consistent with that that she makes. And so the question is, why is that not enough? Because it's speculation. And this Court has held that speculation is not enough to meet her burden of proof in this case. And it's definitely not enough to compel the reversal of the agency's decision. And so, as Your Honors have noted, if there was some other evidence other than speculation, that might be enough to consider. But it's just not existing in this record. Yeah, I don't know what other evidence they could have brought in. We have the fact that most of the family has either been given legal status in the United States. There are two family members left. Those family members live under circumstances that none of us would want to live under. Doesn't that, isn't that enough to show that this is a family that for some reason has been targeted over an extended period of time to the point that no one can live there safely? It's unfortunately not enough to establish eligibility under asylum law. Just having multiple family members or the population of Honduras at large, it's just not enough under the law as it is now to establish eligibility for asylum. And I guess that's the depositive ground if there are no further questions.